UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO. 08-113-GWU

WALTER DOUGLAS BROWN,                                    PLAINTIFF,

VS.                        **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                        DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his application for Supplemental Security Income (SSI).  The appeal is

currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.   Is the claimant currently engaged in substantial gainful activity?
     If so, the claimant is not disabled and the claim is denied.

2.   If the claimant is not currently engaged in substantial gainful
     activity, does he have any "severe" impairment or combination
     of impairments--i.e., any impairments significantly limiting his
     physical or mental ability to do basic work activities?  If not, a
     finding of non-disability is made and the claim is denied.

3.   The third step requires the Commissioner to determine
     whether the claimant's severe impairment(s) or combination of
     impairments meets or equals in severity an impairment listed
     in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

08-113  Walter Douglas Brown

Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician

2

08-113  Walter Douglas Brown

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

3

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to

4

08-113  Walter Douglas Brown

make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  <u>Id.</u> at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  <u>E.g.</u>, <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition,

a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

08-113  Walter Douglas Brown

accurately portrays the plaintiff's physical and mental impairments.   Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Walter Douglas Brown, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative joint disease of the bilateral knees and chronic neck, mid, and low back pain secondary to degenerative disc disease with a herniated nucleus pulposus at C5-C6 (status post discectomy and fusion) and at T8-T9 and L5-S1.  (Tr. 19).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Brown retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 22-6). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of Mr. Brown's age of 46, eighth grade education, and work experience as a logger could perform any jobs if he were limited to no more than the "light" exertional level, with no prolonged standing or walking in excess of one hour without interruption, and also had the following non-exertional restrictions.  (Tr. 243).  He: (1) could not work with his hands overhead; (2) could not climb ladders, ropes, or scaffolds; (3) could occasionally stoop, crouch, crawl, or climb stairs or ramps; (4) could have no exposure to concentrated temperature extremes, vibration, or industrial hazards; (5)

7

could not operate foot pedal controls; and (6) could not perform a job with a requirement for literacy.  (Tr. 243-4).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 244).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence.

Mr. Brown alleged disability due to back problems.  (Tr. 66-7).  He testified that he had numbness and swelling in both hands following a cervical spine fusion in 2006, although there had been some improvement in his condition, but his worst current problem was in his low back.  (Tr. 223, 228, 235-6).  In addition to pain in the lower back, he had difficulty controlling his legs which would "dance" uncontrollably if he, for instance, stepped on a rock.  He also had difficulty driving a vehicle with a clutch and had given up driving his truck.  (Tr. 246, 248-9).

The medical evidence shows that the plaintiff was complaining of pain "everywhere" to a neurosurgeon, Dr. Phillip Tibbs, in October, 2005.  (Tr. 151).  Dr. Tibbs reviewed a cervical MRI showing herniations at three levels and central and foraminal stenosis (Tr. 119, 151) and obtained a thoracic MRI showing a disc herniation at T8-9 (Tr. 143, 150).  After an MRI of the brain ruled out trouble from that source, Dr. Tibbs performed a cervical fusion in January, 2006.  (Tr. 148-9).  On seeing Dr. Tibbs again in February, Mr. Brown reported that his arm pain was

improved, although he still had neck pain, and Dr. Tibbs's examination showed normal strength but reflexes only "1/4." (Tr. 148). An x-ray showed a "good solid fusion" of the cervical spine. Dr. Tibbs prescribed medication and asked the plaintiff to return in two months. When Dr. Tibbs saw the plaintiff again in December, 2006, he noted that he believed the plaintiff had a definite, well-established cervical myelopathy which was the "probable cause of his instability." (Tr. 198). Examination showed hyperreflexia and bilateral Hoffmann's responses.[1] Although Dr. Tibbs opined that the cervical decompression was good, and that no further surgery would be appropriate, he stated that it was medically probable Mr. Brown was disabled from the types of work activities he had done in the past.

Other medical evidence indicates that Mr. Brown underwent a left hernia repair operation in November, 2005. (Tr. 165). No permanent functional restrictions are suggested.

There are opinions from two non-examining state agency reviewers. Dr. S. Mukherjee reviewed the evidence as of February, 2006, and concluded that Mr. Brown would be capable of light level exertion with a need to alternate sitting and standing, and was limited to occasional stooping, crouching, crawling, pushing and

---

[1]Hoffman's sign is described as "a sudden nipping of the nail of the index, middle, or ring finger [which] produces flexion of the terminal phalanx of the thumb and of the second and third phalanx of some other finger." Dorland's Illustrated Medical Dictionary, 27th Ed., p. 1523.

08-113  Walter Douglas Brown

pulling with the lower extremities and occasionally climbing ladders, ropes, and scaffolds.  He would also need to avoid concentrated exposure to extreme cold, and even moderate exposure to vibration and hazards. (Tr. 154-60).  Dr. Timothy Gregg completed an assessment in July, 2006, which he described as a "best expected 12 month outcome," which would have limited the plaintiff to only medium level exertion and no more than frequent overhead reaching. (Tr. 175-81). Neither of the reviewers had all of the evidence available for review.

Apparently because of the limited amount of evidence, the ALJ decided during the administrative hearing to send the plaintiff for a consultative physical examination. (Tr. 250-1).  The examination was conducted by Dr. Mohammad Khan[2] on February 5, 2007.  Dr. Khan apparently had the cervical and thoracic MRIs available for review, as well as the notes of Dr. Tibbs. (Tr. 199-200).  He noted that the plaintiff had mild to moderate difficulty walking and numbness and tingling in the fingers.  His examination showed "absolutely no fine touch sensation starting from T6-T7 down to the leg," and there was also no sensation in the anterior abdominal wall, inguinal area, and anterior lower extremity. (Tr. 201).  The cervical spine was mildly tender, but with normal motor strength and no significant sensory deficits in the arms. (Id.).  The musculoskeletal examination was largely normal.

[2]Although the physician's name is typed as "Kahn," his signature appears to indicate that it is spelled "Khan."

08-113  Walter Douglas Brown

(Id.).  Dr. Khan commented that Mr. Brown had "unusual" symptoms of numbness and tingling, but stated that they were usually the result of a tumor or a bulging disc compressing the spine in the thoracic region.  (Tr. 201-2).  He felt that Mr. Brown would benefit from an evaluation by an orthopedic surgeon or a neurosurgeon, and for the time being he would "urgently" need physical therapy.  (Tr. 202).  He added that: "This is affecting his life.  The patient had difficulty walking . . . .  The patient can walk half an hour . . . , stand half an hour . . . , and sit comfortably for many hours."  (Id.).

Dr. Khan completed a medical source statement limiting the plaintiff to lifting and carrying 25 pounds occasionally and frequently, standing and walking less than two hours in an eight-hour work day, having no limitations on sitting, pushing, or pulling, and being limited to occasionally climbing, balancing, kneeling, crouching, crawling, and stooping.  (Tr. 208-10).  He reiterated that his restrictions were due to probably a tumor or ruptured disc at the T4-T6 level.  (Tr. 209).[3]

In reviewing the medical evidence, the ALJ noted Dr. Khan's opinion that the plaintiff could walk half an hour, stand half an hour, and sit comfortably for many hours, but there is no evidence that he saw or considered the functional capacity assessment attached to the consultant's report.  (Tr. 20).

---

[3]The ALJ's statement that "Dr. Khan frankly admits he is perplexed and cannot find anything wrong . . . ." is incorrect.  (Tr. 24).

11

08-113  Walter Douglas Brown

Social Security Ruling 85-15 indicates that maintaining body equilibrium is required in everyday activities and may be critical in some occupations where a person's only limitation is in climbing and balancing "it would not ordinarily have a significant impact on the broad world of work."  In the present case, the plaintiff has additional non-exertional limitations, and 85-15 implies that in such circumstances the testimony of a VE should be obtained.  In view of the fact that Dr. Khan was the only examining source to give a detailed opinion, a remand will be required for consideration of his assessment.

The plaintiff also cites the language in Dr. Khan's narrative report that the plaintiff could walk and stand half an hour.  (Tr. 202).  He suggests that this is inconsistent with the hypothetical restriction to a sit/stand option and no more than one hour without interruption.  It is not entirely clear whether Dr. Khan meant to limit the plaintiff to a total of one hour of standing and walking per day, but the vocational significance, if any, can be clarified by the VE on remand.

The decision will be remanded for further consideration of the factors outlined in this opinion.

This the 15th day of July, 2009.



**Signed By:**

_**G. Wix Unthank**_

**United States Senior Judge**